Okay, come on up. Last case for today. Number 21-13468, Jonathan Mullane v. Federico Moreno et al. Mr. Mullane, whenever you're ready. Good morning, your honors. Jonathan Mullane, may it please the court. Unless there are any threshold questions from the panel today, I'd like to begin my argument by really focusing on the scope of employment issue, which I think is really this positive and determinative. And before I get into that, just to explain my focus on that issue, it occurred to me that realistically, if this panel were to agree with my argument that I raised both in the lower court below and now on appeal, that the defendants in question were not acting within the scope of their employment. It occurred to me that realistically, all of these other, you know, there are obviously other complex legal issues in the case. Off the top of my head, the creation of a new Bivens remedy, or perhaps, you know, the clearly established constitutional right question with respect to qualified immunity. All of those things really go away. Those questions become. I do want to start with the Westlaw Act certification. I think from reading your brief, your contention is that you cannot use that certification in a case where, for example, you cite a case, Nadler, from our court about leaking. And you say that it expands to leaking information about a criminal investigation to the media. But the actions you complain about and set out in your complaint aren't limited to that sort of action by the individual defendants. So, for example, part of the conspiracy you allege is that a certain number of assistant U.S. attorneys conspired and agreed to have you keep working on a matter despite the fact that you had a conflict. Correct. You think that that's not within the scope of their employment, whether it was right or wrong to do it, as you allege? You think that's not within the scope of their employment to have someone who is in an intern capacity continue to work on a matter? I would concede the point I agree with, Your Honor, that. Then why isn't the Westlaw certification sufficient? The Westlaw certification, as far as I know, is not on an item by item basis. It's just for something that is covered within the complaint.  And my response to that would be, of course, as Your Honor pointed out, the complaint is not limited to just the assignment of improper assignment of a case. I would agree with you, Judge Jordan, that if my complaint were limited to just that and not to the retaliation and all of these post hoc events that are essentially why I'm here today and how I've been harmed, for me, that is really what my complaint is about. And the resultant harm. The harm wasn't from me. Well, of course, that was, you know, because the causation probably. But the harm and the basis for this lawsuit is not just one improper assignment of a case. I mean, if that were the case, I wouldn't be here. But do you think that's the genesis of what you allege that that's the genesis of the whole problem? It all started from that. So do you think that the Westfall certification, even under your theory, was correct in part? I mean, could the government have filed the Westlaw certification that said as to acts, alleged acts A, B and C? Yes. And within the scope of employment and with regards to acts, you know, E, F and G, no. And I'm glad your honor brought that up, because, in fact, I believe I raised that in my brief or at least in the motion for reconsideration below. In other circuit, in sister circuits, there is case law to that effect, that it's not enough to just make a blanket statement, which is what occurred in this case. The United States attorney certified. I can't remember the exact language, but it was a one sentence declaration that these employees were acting within the scope of their scope of employment. Full stop. Nothing else. No explanation why. No explanation of their job descriptions in the first place. No explanation of, even assuming they were within their job descriptions, how the tortious conduct sort of should be covered under Westfall Act immunity. None of those things are explained. Unfortunately, and I'll look again to see if there's been any change in the case law, but I'm not aware of any 11th Circuit case that's directly on point. Go to Judge Jordan's broader question. So I do have some questions for the government about whether some of these employees were acting within the scope of their employment. The way I understood the absolute immunity that's provided by the Westfall Act is that you get the immunity from common law torts that arise out of acts that are undertaken in the course of your employment. So do we look in this complaint just to see whether there's something in there that arose in the course of employment? Or do we look at it claim by claim to see whether each common law tort alleged arose under the course of employment? Does that make sense? I believe it's claim by claim. Do you have a case for that? I mean, it's fine if you're just arguing that. I guess my question is, is that something we're going to have to decide in this case? And that actually goes back to my original point, which is why I wanted to bring this up in the first place. There's so few facts of record. There was no hearing held, not even a status conference. There was no, I timely moved, and the government acknowledged that correctly in their brief, that I had timely moved for scope of employment discovery. I don't see how that how it would have hurt. And obviously, it had that had that taken place. Then, of course, on appeal, this court could say, no, the district court correctly credited the attorney as she certified, you know, the defendant, Laird, defendant Moreno was hired for that purpose. And then there would be no ambiguity. But unfortunately, with the limited facts of record, I don't believe there's enough facts to make the conclusion. And further to my point, I would also add that I'd like to respectfully remind the court, this is really the government's burden to show that they were acting within their scope of employment. Going back to the Westfall Act, I believe the Westfall, unless I'm mistaken, I believe that the Westfall Act goes a step further. Not only do they need to be acting within their scope of employment, they also have to make a showing that it was within their discretionary authorities. So that's, you know, another that hasn't even been touched upon by anyone. Because, again, you know, there's no there's no facts. My submission today is that the threshold inquiry, the first prong of was the tortious conduct within the scope of employment, yes or no, my argument today is that it's not. And even I mean, obviously, the government is entitled to disagree with me. But at the end of the day, it's their legal burden to make that prima facie showing. My argument is that simply making when you take the Westfall Act certification, which contains, you know, the one sentence from the United States attorney, you take the allegations of the complaint. I think, you know, it's it's very hard to understand what exactly and going back to your earlier point about does the court need to go claim by claim? I would I would argue that for for the Westfall Act certification, it would need to be far more clear, because how can I as the plaintiff make any sort of analysis? I don't even know who I'm suing. Am I suing the government? Am I suing, you know, the threshold inquiry that really affects all of these other issues is was was is the scope of employment. How does your voluntary dismissal of the claims against the United States affect? The Westfall certification issue, if at all. My argument is that the Westfall Act and I at least it's my hope that it was clear from the record and that's still my argument on appeal that the the substitution was that the substitution was improper. So therefore, the United States shouldn't have intervened because I never sued the United States. You dismiss your claims against the United States because I didn't want to sue them. Is that not? No, but I'm not aware of any authority. I know you're not required to sue anybody at the time you dismiss, though. The claims you had remaining against you think wrongfully, but at the time you dismissed the claims you had that you had initially asserted against the individual defendants or claims against the United States, right? According to the district court. Right. And then you dismiss those claims. Yes. So my question is, how does that affect your claim of the Westfall Act certification? In other words, aren't you required weren't you required to proceed to judgment with regards to the United States and then take an appeal and then say the Westfall certifications were incorrect, deficient, problematic, whatever legal principle you want to use? And then the whole case comes up. But if you if you're my perspective and I'm trying to be perfectly candid with the court, I read their the government's motion to dismiss specifically. Sorry, I should clarify the United States's motion to dismiss. I I kind of agreed with not everything, but I agreed with the you know, it was clear to me that any there was no remaining viable claims against the United States. Because, of course, then, you know, we're getting there all other sorts of defenses that apply to the United States, you know, discretionary functions, et cetera, et cetera. So from my perspective, it was my thought process was, why should I, you know, engage in motion practice that I don't even believe in and, you know, fight them on the motion to dismiss? So that's why I took the appeal. I think, you know, Judge Jordan's asking you sort of like, you know, a preservation question, right? Did you preserve your sort of objection to the United States being substituted in? And I think I think from your perspective, you would say something like, well, I didn't want my claims against these individuals to become claims against the United States. But once I lost that fight, what I did after that was really irrelevant because I'd already lost the issue that I was trying to preserve for purposes of exactly. Yes, and I see that I'm out of time. So is there any further questions from the panel? All right. Thank you very much. You've saved your time for rebuttal. Good morning. I may have pleased the court. I'm turning directly to Mr. Mullane's argument about the Westfall certifications. The district court properly dismissed all of the claims, all of the tort claims against the individuals because the Westfall Act accords federal employees absolute immunity from common law torts. All that the statute requires, which is 2679 D1. Common law torts committed within the scope of their employment. Exactly. Exactly so. Do we do we have to analyze given that that's what the text of the act says? Do we have to analyze his allegations of torts? You know, each tort, whether that allegation was something about whether it was committed under during employment and the scope of the employment, or do we just have to look at it and say, well, there's a lot of stuff in this complaint that clearly has to do with, you know, actions taken in the course of employment? Is this like a broad question we have to answer? Or is it specific? I think in this particular case, it's actually easy for the court because as Judge Jordan pointed out, the entire nucleus of this case, right, arose from taking the allegations as true in the complaint as the district court properly did. The entire complaint arose from the United States Attorney's Office and the AUSA who was supervising him as an intern feared embarrassment from a conflict of interest. They tried to get him to quit. When that failed, they concoct, they came up with a, they enlisted Judge Moreno to help them get Mr. Malayne to quit. And so all of the tort claims arose from the AUSA who supervised him as an intern gave him an unfavorable evaluation. There really was no allegations directly against the U.S. attorney himself. The allegation against the SEC attorney was that I was offered an internship at the SEC and then the SEC attorney, Ms. Roberts, withdrew that offer as a result of these. And so all of this, all of the claims arose from that same body of what happened during the spring of 2018 when he was an intern. And counsel, I just wanted to ask you specifically about the allegations that the AUSA allegedly sent certain information to members of the press. We take the allegations and the complaint, the well-plead allegations as true at this stage. And so that being the case, how does the AUSA's sharing of the tribulations of an intern's experiences, how does the sharing of that information with the press fall within the scope of her employment? Well, again, it was, Mr. Malayne raised this issue and I think it's important to kind of compare and contrast with the case of Harper, I'm sorry, Nadler v. Mann, which I think draws a really interesting contrast. There, the Westfall certification with respect to an AUSA's actions were where the AUSA, outside the scope of his employment, leaked secret grand jury information to the press. Here, the only allegation against his supervisor, a USA lawyer, was that taking that as true, she sent a publicly available transcript of the hearing in Mr. Malayne's case against Barclays Bank to the press. He doesn't evaluate why that happened, but that would be the only claim. Yeah, I mean, that's right, but we said in that case, Nadler, we said, this is a quote, an AUSA who leaks information to the press simply is not doing what his employment contemplated, end quote. And I guess it sure seems like, I mean, I guess you could question whether this is leaking information, but it's providing information to the press. And it's hard for me to see how, I mean, this isn't in conjunction with the criminal prosecution, it's not in conjunction with some kind of public matter that, you know, I mean, this is just, this is in conjunction with a request about an intern. I mean, if an AUSA provided, I guess this just seems kind of crazy. I mean, if I were to call the Attorney General's office and say, hello, I'm a member of the press, I would like the personnel file for all the AUSAs that work in this office. And the AUSA is like, here they all are. Is that within the scope of the employment? No, and I think that's very, very, very different from what happened here. I mean, this was not leaking of any sort of private information, any sort of private personnel matter. Well, let's assume that all of that stuff would be available if someone had FOIAed it, right? So like if someone goes through FOIA and demands personnel documents, I'm not super familiar with FOIA, but let's just assume that that would be available had they gone through the right legal process. Is the fact that it's, how does the secrecy affect the, it might affect whether it's like really bad to do, I guess is my point, but how does it affect the scope of the employment? Right, and I think this all comes back to, I guess, the court's initial question, which is when we're looking at Westfall certification and the Attorney General makes a certification of whether all of the acts contained in the complaint were within the course and scope, that is, and then the United States is substituted in, that creates a presumption that the plaintiff is entitled to rebut. In this case, given that opportunity and in his response to the motion to dismiss, which contained that Westfall certification, Mr. Mullane did not do so. Mr. Mullane simply made reference to some case law, but did not effectively rebut that certification. But don't, can't the allegations of a complaint, if they're not challenged, satisfy that burden that a plaintiff has? Yeah. I mean, if a plaintiff says, so let me give you a factual scenario. It's very, very different from this case. A plaintiff files a tort action against an AUSA or an SEC attorney, and it's a diversity case and the amount in controversy is satisfied, and the claim is that, you know, on a Saturday night, you know, when the plaintiff and his significant other were at dinner, the government attorney and his or her significant other showed up. There was a scuffle because they had had some history in the past in litigation, and the government attorney whacked him in the head, causing him severe injuries when he fell and cracked his skull open. Government files a Westlaw Act certification saying he was acting in the scope of his employment when he hit the plaintiff on a Saturday night at dinner. And the plaintiff just says, look at the allegations in my complaint. That's not within the scope of employment. Has the plaintiff met his burden? I think in that case, that falls much closer to the Nadler case that, yes, whacking someone over the head has nothing to do with the course and scope of your employment. But in this case, when the AUSA, when the entire nucleus of the cases, what happened to me when I was at an AUSA, what happened to me when I was called before Judge Moreno? I mean, look, he's got lots of claims. He's got RICO. He's got sort of conspiracy claims. Like, I get all of that in the sense that, you know, that all goes to this. But the libel, I think it's a libel claim against Lear, is just about this leaking stuff to the press. Leaking, probably not the right word. Sending stuff to the press that he says cast him in a bad light and he says is false. Don't we have to look at that libel claim and say like. Well, the libel claim, I mean, he's failed to allege any sort of false statement that, right, that. Well, that's a different. I mean, that's a different question. I mean, that's a question about the merits, I guess. So for the libel claim, I guess, you know, what's your best argument? I'm just not aware, I guess, going back to your initial argument. I am not aware, and we certainly don't have it in our brief, going Mr. Mullen in his brief, about whether we go claim by claim with respect to the Westfall certification. And I think where the attorney general has looked at a complaint that specifically alleges acts taken by your supervisor when you're an intern and by the U.S. attorney and says all of those acts alleged are part of within the course and scope. I think that's very different from you beat me up in a bar, you had a personal beef with me as your neighbor. Yeah, it seems to me like the only logical thing to do here is to go claim by claim because, like, think of a case, like, you just like your classic employment discrimination case where, like, someone is, you know, is in, you know, a rough relationship with their supervisor and they bring, you know, Title VII claims and all this stuff that has to do with the employee-employee relationship. But then they also say stuff like my supervisor was harassing me and came to my house and trespassed on my property and, like, all these kinds of things. Like, obviously, there can be claims within that sort of general thing that really don't have anything to do with employment. And it seems like we'd have to look at those individually. I think that is correct, but I think in this particular case where Mr. Mullane did not come forward with anything to rebut the Attorney General's Westfall certification, in this case, the district court properly dismissed the individuals on the intentional, on all of the torts, including the intentional torts, and substituted in the United States. But how do you rebut the certification if, I'm trying to think just theoretically, how do you rebut a certification if your rebuttal consists of the very same allegations in the complaint? Like, hey, the complaint says X, Y, and Z, and if you take X, Y, and Z as true at this stage of the proceedings, X, Y, and Z are now within the scope of employment. Like, what does a court do with that? And I haven't done many Westlaw Act cases, so I don't know the answer. Are you required to come up forward with evidentiary proof like an affidavit or documents or something else? Or can you just rely to the extent that it's supportable, the allegations in your complaint? I think it's the latter. And I was just looking at the judge's memorandum opinion, which is a very thorough 44-page memorandum opinion on all of claim by claim dismissing the complaint. And I don't see, to be fair, that the court specifically addressed the specific allegation that AUSA Laird sent a copy of the Judge Moreno transcript to the press. It's all in context of her role as a supervisor. So I take your point on that. And, Counsel, I understand the point that I think you're making about how Nadler is distinguishable. But just returning to the scope of employment factors under Florida law, we look at whether this is the kind of stuff the employee was hired to perform, whether the employee was activated at least in part by a purpose to serve the employer. So could you address those two factors with respect to Ms. Laird's alleged conduct? Well, no, I can't. I think that it really goes back . . . I mean, my best answer to you was that the district court looked at the entire story that was being told in this complaint about the alleged acts that took place during his brief internship with the U.S. Attorney's Office and took those all together. Let me ask you this. Do you think it's . . . because, I mean, this may be the law. I just don't know. Do you think it would be sufficient if . . . like a causal connection here. So in the sense that the reason, the thing that caused AUSA Laird to have the transcript and to be contacted by the press and to be able to answer this question, that that arises from her employment, right? Had she not been the intern supervisor? I think you said much more articulately what I was, I think, trying to also say. And I think there is an allegation in the complaint that Mr. Mullane gave the transcript to AUSA Laird. And I think what I'm trying to say is exactly what Judge Brasher said a lot better. And I think that when you look again at . . . as I understand the Westfall Act law, and I am no expert on that part of the law, is you look at the entire . . . like why did she even have this transcript? He gave it to her, as I understand from the allegations in the complaint, in her role as his supervisor. And, I don't know, whether she was asked for it by the press because it came out of something that happened during Mr. Mullane's tenure as an intern, I think all goes into that inquiry about whether she was . . . This entire thing was not Ms. Laird then separately went out for a dinner and harangued Mr. Mullane or punched him in the face or said, you create a lot of problems for me. This was all part and parcel of her role as his supervisor when he was an intern in the office. If the court has no further questions on that, I did . . . I have one . . . I have zero minutes. I have . . . You can wrap up. Okay. I just wanted to clarify really briefly that our position did change with respect to this court's jurisdiction in light of the court's most recent cases, for example, in Baxter of this past year. So, we do believe that this court does have jurisdiction to consider this case. And, I wanted to conclude by saying that the district court's very thorough 44-page opinion accepted all of the allegations as true as it was required to do. It carefully considered the claims and we asked the court to affirm the district court's dismissal of the complaint. All right. Thank you very much. So, hopefully this won't take too long. I just wanted to . . . I mean, most of the issues raised were obviously fully briefed by the parties, but I did want to bring a few things to the court's attention, namely a factual matter. Counsel just argued that I had supposedly given Defendant Laird the Barclays transcript in her capacity as my supervisor. I failed to see . . . First of all, it's so illogical. Why would I give an acid forfeiture prosecutor a transcript from a personal litigation that has nothing to do with acid forfeiture, which is the department she was in? All I can do is point back to my . . . All we have are the allegations in your complaint.  Plus the Westlaw Act certification. Right. I take your point in the brief that to the extent the district court inferred other things from the complaint, those are not properly before us. But, at least my analysis, I think, is guided by what you alleged in your complaint. We take the properly pled factual allegations as true. Further to your Honor's point, another fact that was one of the factual allegations of the complaint that was just brought up by counsel pertains to Defendant Lisa Roberts. She's the SEC employee. Ms. Roberts communicated via telephone with the University of Miami. So, I don't understand how she can now say, well, you know, she just . . . He's suing her because she withdrew his job offer. That's . . . What's tortious about . . . That's a very limited reading. What's tortious about her talking to the University of Miami? If it's defamatory, that's . . . Did you allege that it was defamatory about her? You allege defamation and slander and libel by a number of defendants. But, I thought with regards to her, the thrust of your claims, all of them, were about the taking away the internship and then terminating the employment offer that you had. Did I read the complaint incorrectly on that score? No, no. I agree with your Honor. I'm just saying it's not . . . It's more than just that. Obviously, you know, I was later denied admission to the bar. You know, there are other . . . No, no. I would need to go back and look. Those are consequences and results and harms caused by the actions you allege. No, your Honor. I'm alleging that they actively interfered in those matters as well. What did Roberts do to interfere with those things? Under a RICO conspiracy theory, I'm not obligated to prove that each . . . Especially pre-discovery, I don't need to show what each and every defendant did. The analogy that comes to mind is in a Privacy Act case. In the Privacy Act . . . Well, you have to explain that somebody did something. No, no. Of course. Who in the conspiracy did something with regards to, let's say, for example, your bar proceedings and attempt to gain membership in the bar? Who did something? One of the conspirators had to do something, right? Yes. Okay. Who did what? With regard to that issue. That's why I timely moved for discovery to . . . No, no, no. To plead a claim for discovery, I mean, to plead a claim for a RICO conspiracy, you have to at the very least allege that somebody in the conspiracy did something, right? Yes. Took a step in furtherance. Who took what step in furtherance of that RICO conspiracy as regards to your bar membership? To use an analogy, in the Privacy Act, when somebody leaks information that's confident, like my employment records, which, of course, happened to me, the plaintiff is not required to point out, oh, here are my medical records that are suddenly on the Internet, but I can't sue anyone because I don't know the name of the exact federal employee pre-discovery. I don't know the name of the exact federal employee that did the leaking. Under the Privacy Act, that's fine. Obviously, as Your Honor pointed out, you need to allege, of course, at a minimum, that somebody leaked something. But I don't believe that at the pleading, the motion to dismiss stage, I don't believe that I'm required to allege with that degree of particularity. And if there are no further questions from the panel, I see that I'm out of time, so I respectfully ask the Court to reverse the appealed judgments of the District Court. Thank you. All right. Thank you both very much. We're in recess for today.